TERRELL, Justice.
Appellant instituted this suit against ap-pellee to recover principal and interest on seven promissory notes aggregating $37,-500. Each note was payable 90 days from date; three of them bore interest after maturity at the rate of 10% per annum and four of them bore interest after maturity at 8% per annum. Defendant answered the complaint interposing the defense of usury in that the interest exacted exceeded 25% per annum. Defendant also proffered a counterclaim in which he sought to recover the sum of $72,710.64 in principal and usurious interest paid above the rate of 25% per annum. Defendant moved for summary judgment which was resisted by plaintiff on the ground that the pleadings and affidavits revealed a question of fact that should be tried by a jury.
The trial court found (1) that on January 15, 1951, plaintiff and defendant entered into a contract wherein it was agreed that plaintiff would advance to defendant as requested sums not exceeding $40,000; that defendant was required to pay plaintiff, *324 in addition to interest and cost of stamps to the notes 3j/j>% interest monthly on the sums loaned; after the 3i/¿% amounts to $7,200, it should be reduced to 2% on any other sums advanced; (2) that the $7,200, if received, would be credited on a timber contract between the parties for cutting timber on a tract in St. Johns County, known as “Montgomery Sisters Tract”; (3) that during the years 1951 and 1952 plaintiff loaned defendant various amounts on which there remained unpaid the sum of $37,500, evidenced by notes executed in 1952,-some of which were renewal*; (4) that defendant paid the plaintiff the $7,200 mentioned in the contract of January 15, 1951, before any of the notes executed in 1952 being sued on, were executed. The gist of the trial court’s findings are embraced in paragraphs 5 and 6 as follows:
“5. That the terms, meaning and intent of said written contract of January 15, 1951, at least so far as applicable to loans made after said $7,200.00 was paid, are clear, plain and unambiguous and are not subject to be changed, varied or contradicted by parole [sic] as Plaintiff seeks to do: that said contract is and was a contrivance or device by which Plaintiff was to charge and exact from Defendant interest on said notes made and dated in 1952 pursuant to said contract at the usurious rate of more than 25% per annum, to-wit: at the rate of 6% per annum plus 2% per month: that Plaintiff pursuant to said contract did wilfully and knowingly charge and exact from the Defendant on each of said notes made and dated in 1952 and aggregating the sum of $37,500.00 interest at the usurious rate of more than 25% per annum, to-wit: at the rate of 30% per annum; and that because of said usurious interest charged, exacted and paid each and all of said notes are void and unenforceable, both as to principal and as to interest.
“6. That there is no genuine issue in this case between the parties to this suit as to any material fact above found by the Court and that the Defendant on his motion is entitled to the summary judgment herein made and entered as a matter of law.”
From this order and finding the plaintiff appealed.
The point for determination is whether or not the appellee was obligated to appellant in any manner when he (appellant) on January 15, 1951, agreed to loan ap-pellee not in excess of $40,000, as result of their previous contract concerning the “Montgomery Sisters Tract.”
It is not clear that the record discloses a “contrivance or device” to evade the usury law. In all other respects the judgment appealed from finds ample support in the record, but on this point there may have been a material issue of fact. If this be true, then it was error to grant summary judgment. The letter of January 15, 1951, was admitted in evidence. There is no doubt that the loans to appellee were made pursuant to agreement stated therein. Appellee carried the 3i/£% monthly “interest” on his books as such but labeled it “Montgomery Sisters Tract,” so he would know when he had paid $7,200 as the “interest” rate thereon reduced itself to 2% monthly, plus 6% per annum. Ap-pellee’s bookkeeper testified that he carried it on his books as “Montgomery Sisters Tract Loss,” but later the auditor required him to change it to an expense item, “interest.”
Appellee carried a capital account on his books known as “Montgomery Sisters Tract.” It is not clear as to what manner this account referred to any obligation of appellee. It is clear that the parties had some kind of an agreement about this land. The record indicates that appellant had title to it and when appellee removed and paid for a certain portion of the timber (approximately $72,000), appellee was to have one-half interest in it. The contract concerning “Montgomery Sisters Tract” was introduced in evidence but it does not appear in the record. It must have been dated in the year 1945 but before appellee got title to one-half of the -property, the *325 contract was cancelled. To what extent it was cancelled may determine the issue of fact in controversy.
Appellant contends that he cancelled only that part of the agreement relating to the one-half interest in the land but that the liability of appellee for cutting the timber continued. Page 40 of appellant’s deposition supports this contention but when the timber and the land contracts are read together, it appears that if Bryce cut and removed timber to the amount of $72,000 and paid for it, he would be entitled to one-half interest in the land and in the remaining timber. The view of appellee as to existence of any liability under the timber contract as shown by his deposition at page 33, is different.
From the evidence referred to in the preceding paragraph Parker says Bryce is still obligated under the old timber contract while Bryce flatly disputes any such obligation. It necessarily follows that if the 31/2 % monthly interest were in payment of any obligation that Bryce may have made, certainly Parker was not guilty of violating the usury law. If an obligation between the parties existed, it may have been no more than an installment device for paying the obligation. Inspection of the summary final judgment does not disclose that the trial court considered and ruled on the point as to continuation of the obligation. It was not enough to conclude that it was a scheme to avoid the usury laws. It is certain that the “Montgomery Sisters Tract,” referred to in the letter of January 15, 1951, was a subject the trial court should have inquired into. If there was a bona fide dispute as to liability under said agreement it would be such a material fact as would preclude the entry of summary judgment.
If the trial court has in fact considered this aspect of the case, reversal for new trial might not affect the result since he had the contract before him and we do not. He may have found that there was no obligation on the part of appellee under “Montgomery Sisters” contract but from the language of the summary judgment it is not clear that he followed the course pointed out here. Appellant contends that there was a genuine issue of material fact for determination of a jury. While it is contended that he never requested’ a jury trial, whether that is true or not, he is entitled to a determination of this issue.
The judgment appealed from is accordingly reversed and a new trial awarded.
DREW, C. J., and HOBSON and O’CON-NELL, TT., concur.